| STATE OF LOUISIANA | § |
|---|---|
| | § |
| PARISH OF OUACHITA | § |

## AFFIDAVIT OF LOST CREDIT AGREEMENT

Loan Number: ███

I, Connie O. Adams, the undersigned, being duly sworn, state as follows:

1. I am a/an Vice President of JPMorgan Chase Bank, N.A. ("Chase").

2. Chase is the custodian of the collateral documents described in paragraph 4 below (the "Loan"). Chase is the party seeking to enforce the credit agreement described below.

3. I have access to certain of Chase's business records, including the business records of Chase and JPMorgan Chase Custody Services, Inc., a subsidiary of Chase, concerning the Loan. These records are maintained by Chase in the ordinary course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity. I make this affidavit based upon my review of those records.

4. A credit agreement, in the original credit limit amount of $65,250.00, with an original APR of 7.500% per annum, was executed by Jamie E. Hawk and April L. Hawk, and secured by a Pennsylvania Home Equity Line of Credit Open-End Mortgage (Securing Future Advances) (the "Security Instrument") dated June 17, 2005.

5. Chase's regular business practice is to store original credit agreements secured by mortgages and deeds of trust in collateral files maintained by Chase's agent, JPMorgan Chase Custody Services, Inc., in a secure vault facility in Monroe, Louisiana. After a thorough and diligent manual search of the hard copy collateral file pertaining to the loan, the original credit agreement was not located.

6. The loss of possession is not the result of the original credit agreement being canceled or transferred to another party.

LNA-v3

Loan Number: 

7. A copy of the original credit agreement is attached hereto.

JPMorgan Chase Bank, N.A.

By: _____

Name: Connie O. Adams

Title: Vice President

Date: 11-26-2019

Subscribed and sworn to before me
This 26 day of November, 2019, by
Connie O. Adams.

_____,

Notary Public      Amy Gott  #66396
State of Louisiana

My commission expires: Lifetime commission
Personally known __X__ OR
Produced identification __N/A__
Type of identification produced: N/A

Amy Gott
Ouachita Parish, Louisiana
Lifetime Commission
Notary Public ID # 66396

LNA-v3

Property Address:
295 PINE GROVE RD, HANOVER, PA 17331-9013

Prepared By:
**PENNY SOTAK**

Record and Return Address:
JPMorgan Chase Bank, N.A.
c/o Chase Home Finance LLC
1500 N. 19th St.
Monroe, LA 71201
Attn: Document Control 6th FL. - HE

Telephone Number: (585) 258-5815
Reference #
Servicing #

Image ID: 000000922402 Type: GEN
Recorded: 06/23/2005 at 10:35:35 AM
Fee Amt: $60.00 Page 1 of 9
Instr# 200500012794
Adams County, PA
Patsy S. Gochenauer Recorder of Deed
BK 4016 PG 148

# PENNSYLVANIA
# HOME EQUITY LINE OF CREDIT
# OPEN-END MORTGAGE
(Securing Future Advances)

THIS OPEN-END MORTGAGE is given on _____June 17, 2005_____. The mortgagor is
**JAMIE E HAWK and APRIL L HAWK**

This Mortgage is given to **JPMorgan Chase Bank, N.A.**
a national banking association which is organized under the laws of the United States, and whose address is
**1111 Polaris Parkway, Columbus, OH 43240**
("Lender") or its successors or assignees. Any communication to the Lender should be sent to
**c/o Chase Home Finance LLC, 250 West Huron Road, P. O. Box 93764, Cleveland, OH 44113**
In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us" and "our" refer to **JPMorgan Chase Bank, N.A.**

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of
**Sixty-Five Thousand Two Hundred Fifty and 00/100**
Dollars (U.S. $ **65,250.00** ). The Agreement provides for a final scheduled installment due and payable not later than on _____**July 1, 2035**_____ . You agree that this Mortgage shall continue to secure all sums now or thereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, future advances and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, including future advances, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the property located in

PALCMT (Rev. 05/03/05)v2                                     Page 1 of 8

SCHEDULE C
(Legal Description)

BK 4016 PG 149

ALL that certain tract of land situate on the Southwest side of Pennsylvania State Legislative Route #01030, in Union Township, Adams County, Pennsylvania, more particularly bounded and designed as follow:

BEGINNING at a point in the center of the Legislative Route aforesaid on line of lands of Robert Guinn; thence by said lands and lands of R. Reindollar, through an iron pin set back 25 feet from the beginning hereof, South 30 degrees 54 minutes West, 353.90 feet to a steel pin; thence continuing by lands of R. Reindollar, North 71 degrees 50 minutes 10 seconds West, 539.08 feet to a steel pin; thence by lands of same, South 39 degrees 47 minutes 20 seconds West, 585.11 feet to a steel pin at lands of Carroll Miller; thence by said lands, North 49 degrees 13 minutes 40 seconds West, 298.62 feet to a steel pin; thence continuing by lands of same, North 34 degrees 19 minutes 40 seconds East, 624.54 feet through a steel pin set back 25.42 feet from the end hereof to a corner at or near the curb of the Pennsylvania Legislative Route aforesaid; thence in curb of the Pennsylvania Legislative Route aforesaid; thence in and along the center line of the Pennsylvania Legislative Route aforesaid, South 65 degrees 30 minutes East, 852.92 feet to a point in the center of said Legislative Route, the place of BEGINNING. CONTAINING 11.7186 acres, neat measure.

LESS HOWEVER, a tract of land sold to Lynville G. Seabrook and Mary A. Seabrook, his wife, from Donald J. Myers and Rita A. Myers, his wife, dated August 6, 1979 and recorded in Deed Book 347, page 67, containing 4.6295 acres and more specifically shown in Plan Book 29, page 11.

_____ADAMS_____County, Pennsylvania and more fully described in EXHIBIT A, which is attached hereto and made a part hereof, which property has the address of **295 PINE GROVE RD, HANOVER, PA 17331-9013**
("Property Address");

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

1. **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3. **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

4. **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole

discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

**5. Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

**6. Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorneys' fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance

7.  **Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

8.  **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

9.  **You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successors in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

10. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

11. **Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

12. **Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

13. **Governing Law; Severability.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC ° 85 incorporates Ohio law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

14. **Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

15. **Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

16. **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

17. **Acceleration; Remedies. You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d)**

that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of documentary evidence, abstracts and title reports.

18. **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

19. **Release.** Upon payment of all sums secured by this Mortgage, this Mortgage and the estate conveyed shall terminate and become void after such occurrence, we shall discharge and satisfy this Mortgage without charge to you. You shall pay any recordation costs.

20. **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

21. **Waivers.** You, to the extent permitted by applicable law, waive and release any error or defect in proceeding to enforce this Mortgage, and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption. No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision of covenant at any other time.

22. **Reinstatement Period.** Your time to reinstate provided in Section 17 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage.

23. **Purchase Money Mortgage.** If any of the debt secured by this Mortgage is lent to you to acquire title to the Property, this Mortgage shall be a purchase money mortgage.

24. **Interest Rate After Judgment.** You agree that the interest rate payable after a judgment is entered on the Agreement or in an action of mortgage foreclosure shall be the rate payable from time to time under the Agreement.

25. **Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

☐ Condominium Rider    ☐ 1-4 Family Rider

☐ Planned Unit Development Rider    ☐ Other(s)_____

**IN WITNESS WHEREOF,** you have hereunto set your hand and seal the day and year first above written.

Witnesses:

_michelle K. Becker_    _Jamie E Hawk_ (Seal)
JAMIE E HAWK

_____    _April L. Hawk_ (Seal)
APRIL L HAWK

_____    _____(Seal)

_____    _____(Seal)

_____    _____(Seal)

_____    _____(Seal)

State of Pennsylvania
County of YORK

On this, the 17th day of June, 2005, before me MICHELLE K. BECKER, the undersigned officer, personally appeared JAMIE E HAWK AND April HAWK, known to me (or satisfactorily proven) to be the person whose name S subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MICHELLE K. BECKER, Notary Public
Hanover Boro., York County
My Commission Expires March 19, 2009

Michelle K. Becker
Title of Officer:

My commission expires:

## CERTIFICATE OF RESIDENCE OF MORTGAGEE

The precise address and principal place of business of the Mortgagee is
1111 Polaris Parkway, Columbus, OH 43240

JPMorgan Chase Bank, N.A.

By: Penny Sotak
Name:
Title: Closer

PALCMT                     Page 8 of 8

State of Pennsylvania ⎱ S.S.
Adams County ⎰
Recorded on this 23rd day of June
A.D. 2005 in the Recorder's office of Adams County
in ___Record___ Book, Vol. 4016 Page 148
Witness my hand and official seal of Gettysburg, PA
the day and year aforesaid.

_Patsy S. Clockensuess_ Recorder